UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

United States of America,

       Plaintiff,

REPORT AND RECOMMENDATION

  vs.

Zachary Charles Leonard,

       Defendant.        Crim. No. 06-163 (02) (PJS/RLE)

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

I. Introduction

This matter came before the undersigned United States Magistrate Judge pursuant to a general assignment, made in accordance with the provisions of Title 28 U.S.C. §636(b)(1)(B), upon the Motion of the Defendant Zachary Charles Leonard, ("Leonard") to Suppress Statements.   A Hearing on the Motion was originally scheduled for September 12, 2006, however, on September 7, 2006, the Court received a letter from the Defendant's counsel, Paul Engh, Esq., which stated, in part, as follows:

      The parties have agreed that no formal appearance is
      required for next week's hearing.  The transcript has been

> filed and the defense view is that the record is sufficiently
> developed.

Letter, Docket No. 62.

The Government also represents that "the Court can resolve this issue based on the record created at the original motions hearing, at which a Border Patrol agent testified to the circumstances leading up to the defendant's arrest."   Docket No. 64. Accordingly, we take the Defendant's Motion to Suppress Statements based on the Record before us, which consists of the parties written submissions, as well as the transcript of the previous Motions Hearing on July 10, 2006.  Docket No. 57.

For reasons which follow, we recommend that the Defendant's Motion to Suppress Statements be denied.

## II.  Factual and Procedural Background

Together with a co-Defendant, the Defendant is charged with one Count of possession with intent to distribute 3,4-methylenedioxymethamphetamine ("MDMA"), also known as "Ecstacy", in violation of Title 21 U.S.C. §§841(a)(1), (b)(1)(C), and Title 18 U.S.C. §2, as each Defendant is alleged to have aided and abetted the other. The events which gave rise to the charge are said to have occurred on April 5, 2006, and all of the events are alleged to have occurred in this State and District.   As

pertinent to that charge, and to the Motion now before us, the operative facts may be briefly summarized.[1]

By way of background, a Hearing on the Defendant's initial Pre-Trial Motions was conducted on July 10, 2006, at which time, the Defendant appeared personally, and by Paul C. Engh, Esq.; and the Government appeared by Jeffrey S. Paulsen, Assistant United States Attorney.   On July 24, we issued a Report which recommended that the Defendant's Motion to Suppress Evidence, that was obtained by Search and Seizure, be denied.   We concluded that, under the border search exception, the routine search of the vehicle, in which the Defendant was traveling,  by United States Customs officials, was lawful without regard to the presence of either probable cause, or a reasonable articulable suspicion.  Docket No. 40.  On August 9, 2006, the Defendant filed his objections to our Report and Recommendation and, for the first time, challenged the Defendant's arrest as unlawful, citing to a State Court's

---

[1]Rule 12(d), Federal Rules of Criminal Procedure, provides that, "[w]hen factual issues are involved in deciding a motion, the court must state its essential findings on the record."   As augmented by our recitation of factual findings in our "Discussion," the essential factual findings, that are required by the Recommendations we make, are contained in this segment of our Opinion.   Of course, these factual findings are preliminary in nature, are confined solely to the Motions before the Court, and are subject to such future modification as the subsequent development of the facts and law may require.  See, United States v. Moore, 936 F.2d 287, 288-89 (6th Cir. 1991); United States v. Prieto-Villa, 910 F.2d 601, 610 (9th Cir. 1990).

findings in State v. Leonard, No. K0-06-161, at p. 4 (Minn. Dist. Ct., May 22, 2006). Docket No. 42. The District Court adopted our Report and Recommendation, and denied the Defendant's Motion to Suppress. See, Docket No. 45.

On August 29, 2006, the Defendant filed a Motion to Suppress the telephonic statements he made while he was held in custody at the Koochiching County Adult Detention Center Facility. See, Docket No. 58. The Defendant does not challenge the process by which his statements were recorded. See, Docket No. 62. Instead, he contends that his arrest was not supported by probable cause, and that he should not have been brought to the Jail, where his statements were recorded, in the first instance. In State v. Leonard, supra at 4, a State Court Judge granted the Defendant's Motion to Dismiss the State Court charges against him, based on the Court's conclusion that, under Minnesota law, the Defendant's arrest was not based upon a showing of probable cause.

As recounted in our previous Report and Recommendation, Daniel Shepard ("Shepard"), who is a Customs and Border Patrol ("CBP") officer stationed in International Falls, Minnesota, testified at the Suppression Hearing of July 10, 2006. As we have previously recounted, his testimony was as follows:

> On April 5, 2006, Shepard was performing his duties
> in connection with his work with the CBP, when he was

informed by way of a tip sheet, that had been provided by his supervisor, to be on the lookout for four (4) vehicles. The tip sheet provided the make, model, and license plate numbers of the vehicles, but did not provide any names associated with the vehicles. The tip sheet also specified that the listed vehicles were subject to secondary inspection if they attempted to cross the border, and that the Immigration and Customs Enforcement Agency was to be immediately contacted.

At approximately 11:17 o'clock a.m., Shepard was informed that a van, which matched a description and license plate number that was listed on the tip sheet, was in one of the primary lanes utilized for crossing the United States border from Canada. The van was driven by Stacy Marie Peterson ("Peterson"), who is a Co-Defendant in this case. The Defendant, as well as an infant, were also present in the van.

During the primary inspection of the vehicle, Peterson and the Defendant were asked for identification. Peterson provided a drivers license, and the Defendant's identity was independently established. Both Peterson and the Defendant orally declared that they were not transporting or carrying any controlled substances, and subsequently they provided written declarations to that effect.

Shepard, as well as other CBP officials, proceeded to inspect the vehicle. After approximately seven (7) or eight (8) minutes, Shepard observed that one of the interior panels on the passenger side was improperly attached, which resulted in the presence of a gap. Shepard pried away the interior panel and examined the area with his flashlight. He discovered bags containing a number of pills, which he preliminarily identified as Ecstacy, based upon their resemblance to pictures he had previously observed in

intelligence manuals.   Shepard informed the Drug Enforcement Agency ("DEA") officers, who were aiding in the search, that he had discovered a number of pills.  Upon further inspection, Shepard, as well as other personnel, removed eighteen (18) bags of pills hidden behind the interior panels of the vehicle.   A search of the trunk -- specifically in the area reserved for a car jack -- yielded an additional five (5) bags of contraband.   The bags of pills were discovered approximately twenty-five (25) minutes after the vehicle was referred to secondary inspection.  The Defendant and Peterson were both arrested, and a subsequent on-site test identified the pills as containing methamphetamine.

Report and Recommendation, Docket No. 40, at pp. 3-4; see also Transcript, Docket No. 57.

While we are uncertain of any evidence that the State Court considered in granting the Defendant's Motion to Dismiss the State Court charges, a review of the Court's opinion demonstrates that the State Court found that "[b]ecause there is no probable cause to bind this matter over for trial on the charge of Importing Controlled Substances Across State Borders, the charge against Defendant must be dismissed." Id. at p. 5.

The State Court noted that it was required to determine whether there was a "sufficient showing of probable cause to believe that the defendant committed the charged offense based on the entire record."   Id. at p. 5, citing State ex rel. Trimble v. Hedman, 192 N.W.2d 432, 434 (1971).  In reaching that conclusion, the State Court

addressed the State's assertion that the Defendant was in constructive possession of

the drugs when they were discovered in the vehicle in which he was a passenger.  As

expressed by the State Court:

> A person's mere presence in a vehicle where drugs are
> found will not, by itself, create probable cause that the
> person possessed the drugs.  State v. Albino, 384 N.W.2d
> 525, 527 (Minn. Ct. App. 1986); State v. Slifka, 256
> N.W.2d 90, 91 (Minn. 1977).   Defendant did not do
> anything that would have aroused the suspicion of law
> enforcement.   The officers did not observe Defendant
> attempting to conceal anything, the drugs were not
> anywhere near Defendant's location in the van, and the van
> belonged to the driver, not Defendant.  There is no evidence
> that Defendant was consciously exercising dominion and
> control over the substance found in the rear quarter panel.
> Without evidence beyond Defendant's presence in the
> vehicle, there is no probable cause for the charge.

Id. at p. 4.

Accordingly, the Defendant argues here, that the Federal Court should reach the same

conclusion as previously reached by the State Court.   Relying on Federal law, we

disagree.

## III.  Discussion

As noted, the Defendant argues that his arrest, on April 5, 2006, was without

probable cause, and therefore, any recorded telephonic statements, which were made

while he was in custody at the Koochiching County Adult Detention Center are

unlawfully tainted, and must be suppressed. As a result, as have the parties, we limit our analysis to a consideration of whether law enforcement had probable cause to arrest the Defendant, and place him in custody.

      A.     <u>Standard of Review</u>. "Determining probable cause to arrest requires the court to focus on the moment the arrest was made and to ask whether 'the facts and circumstances within [the officers'] knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the [suspect] had committed or was committing an offense.'" <u>United States v. Taylor</u>, 106 F.3d 801, 803 (8th Cir. 1997), quoting <u>Beck v. Ohio</u>, 379 U.S. 89, 91 (1964); see also, <u>Kiser v. Huron</u>, 219 F.3d 814, 816 (8th Cir. 2000)("Furthermore, '[a]n officer has probable cause to make a warrantless arrest when facts known to the officer are sufficient to make a reasonably prudent officer believe that the suspect is committing or has committed an offense.'"), quoting <u>Olinger v. Larson</u>, 134 F.3d 1362, 1366 (8th Cir. 1998); <u>Tokar v. Bowersox</u>, 198 F.3d 1039, 1046-47 (8th Cir. 1999)("The existence of probable cause in fact to make a warrantless arrest depends upon whether, at the moment the arrest was made, the facts and circumstances within the arresting officers' knowledge, and of which they had reasonably trustworthy information, were sufficient

to warrant a prudent person to believe that the suspect had committed or was committing an offense.").

We recognize, and accept, that an officer engaged in an arrest need not personally have found probable cause in order to lawfully effect the arrest. As the Court explained, in United States v. Gillette, 245 F.3d 1032, 1034 (8th Cir. 2001), cert. denied, 534 U.S. 982 (2001):

> Where officers work together on an investigation, we have used the so-called "collective knowledge" theory, United States v. Gonzales, 220 F.3d 922, 925 (8th Cir. 2000), to impute the knowledge of one officer to other officers to uphold an otherwise invalid search or seizure. Under this rationale, the validity of a search "may be based on the collective knowledge of all of the law enforcement officers involved in an investigation if * * * some degree of communication exists between them," id. See also United States v. Morales, 238 F.3d 952, 953 (8th Cir. 2001), and United States v. Twiss, 127 F.3d 771, 774 (8th Cir. 1997). The requirement that there be a degree of communication serves to distinguish between officers functioning as a "search team," United States v. O'Connell, 841 F.2d 1408, 1419 (8th Cir. 1988), cert. denied, 487 U.S. 1210, 108 S.Ct. 2857, 101 L.Ed.2d 893 (1988), 488 U.S. 1011, 109 S.Ct. 799, 102 L.Ed.2d 790 (1989), and officers acting as independent actors who merely happen to be investigating the same subject.

"'The determination of whether probable cause exists must not rest on isolated facts; rather it depends on the cumulative effect of the facts in the totality of

circumstances.'"   Tokar v. Bowersox, supra at 1047, quoting United States v. Everroad, 704 F.2d 403, 406 (8th Cir. 1983).   We keep in mind, however, that "[p]robable cause does not require a prima facie showing of criminal activity, but only the probability of criminal activity." Id.

      B.   Legal Analysis.   Here, we find that law enforcement had probable cause to arrest the Defendant for aiding and abetting in the possession of narcotics.   As an initial matter, we note  Shepard's testimony that law enforcement received a tip that CBP officers should be on the watch for a vehicle in which the Defendant was a passenger.   However, the Supreme Court has repeatedly instructed that "the belief of guilt must be particularized with respect to the person to be searched or seized," see, Maryland v. Pringle, 540 U.S. 366, 371 (2003), quoting Ybarra v. Illinois, 444 U.S. 85, 91 (1979), such that:

> [A] person's mere propinquity to others independently suspected of criminal activity does not give rise to probable cause to search that person.  Sibron v. New York, 392 U.S. 40, 62-63[, 88 S.Ct. 1889, 20 L.Ed.2d 917] (1968).  Where the standard is probable cause, a search or seizure of a person must be supported by probable cause particularized with respect to that person.  This requirement cannot be undercut or avoided by simply pointing to the fact that coincidentally there exists probable cause to search or seize another or to search the premises where the person may happen to be.

Id. at 372-73, quoting Ybarra v. Illinois, 444 U.S. 85, 91 (1979).

Accordingly, our Court of Appeals has determined that the "mere association with a known or suspected criminal, or mere presence in that person's automobile, does not create probable cause to arrest." United States v. Caves, 890 F.2d 87, 94 (8th Cir. 1989), quoting, United States v. Clark, 754 F.2d 789, 791 (8th Cir. 1985), quoting, in turn, United States v. Everroad, 704 F.2d 403, 406 (8th Cir. 1983).

However, in Maryland v. Pringle, supra at 801-02, the United States Supreme Court found probable cause where the defendant was one of three passengers riding in a vehicle at 3:16 o'clock a.m.; a sum of $763.00 had been discovered in the glove compartment, which was directly in front of the defendant; narcotics were discovered behind the back seat armrest, which was accessible to each of the vehicle's three occupants; and, upon questioning, the three men failed to offer any information with respect to the ownership of the narcotics, or the money. Id. at 371-72.  In so holding, the Court observed that "a car passenger * * * will often be engaged in a common enterprise with the driver, and have the same interest in concealing the fruits or evidence of their wrongdoing," id. at 373, quoting Wyoming v. Houghton, 526 U.S. 295, 304-05 (1999), and that "it was reasonable for the officer to infer a common enterprise among the three men." Id.  The Court further noted that, unlike the circumstances in United States v. Di Re, 332 U.S. 581 (1948), "[n]o * * * singling out

occurred * * *; none of the three men provided information with respect to ownership of the cocaine or money." Id. at 374.  As a consequence, the Supreme Court held that "a reasonable officer could conclude that there was probable cause to believe [the defendant] committed the crime of possession of [narcotics], either solely or jointly." Id. at 372.

Similarly, in United States v. Velazquez-Rivera, 366 F.3d 661, 665 (8th Cir. 2004), a defendant challenged his arrest by arguing that "his presence as a passenger in a truck that was believed to be hauling cocaine d[id] not create probable cause that he possessed or conspired to possess or distribute the cocaine" that was found in the vehicle.  Our Court of Appeals rejected that argument, applying Maryland v. Pringle, and noted that, "[i]n this case, no one clarified who owned the drugs in the truck because both occupants fled from the truck to the house without stopping to talk to the police," and  "[t]hus, [the defendant's] presence in a truck police reasonably (and accurately) suspected was carrying commercial quantities of cocaine was an important factor in giving the police probable cause to arrest him."  Id.; see also, United States v. Serrano-Lopez, 366 F.3d 628, 635 (8th Cir. 2004)("Although a person's mere presence in a vehicle containing contraband is not enough to find him guilty of the offense, presence and other evidence can give rise to an inference of control.").

Here, we confront factual circumstances which closely parallel those at play in both Maryland v. Pringle, supra, and United States v. Velazquez-Rivera, supra. As we have previously determined, law enforcement lawfully searched the vehicle pursuant to the border search exception. See, Report and Recommendation, Docket No. at pp. 7-8. In finding a large quantity -- approximately twenty-five (25) bags containing 72,000 pills -- of narcotics secreted inside a door panel of the vehicle, law enforcement had probable cause to believe that the Defendant, as a passenger, was engaged in a common enterprise with the driver in drug trafficking. Id. at 373 ("The quantity of drugs and cash in the car indicated the likelihood of drug dealing, an enterprise to which a dealer would be unlikely to admit an innocent person with the potential to furnish evidence against him."). Furthermore, as in Maryland v. Pringle, neither defendant clarified who owned the drugs that were uncovered in the vehicle. Id. at 801; United States v. Velazquez-Rivera, supra at 665. Considering the entirety of the circumstances presented, and being closely guided by the Court's reasoning in Maryland v. Pringle, we find that law enforcement had probable cause to arrest the Defendant for aiding and abetting in the possession of a controlled substance, based upon the discovery of large quantities of narcotics in the vehicle in which he was a passenger.

While the Defendant contends that the State Court findings should persuade us that probable cause was lacking for the Defendant's arrest, we find that case inapposite. In State v. Leonard, supra, the State Court applied State law to conclude that there was a lack of probable cause for the case against the Defendant to proceed to a Jury on the State criminal charge, explaining that, under Minnesota law, "[a] person's mere presence in a vehicle where drugs are found will not, by itself, create probable cause that the person possessed the drugs." Id. at p. 4., State v. Albino, 384 N.W.2d 525, 527 (Minn. Ct. App. 1986); State v. Slifka, 256 N.W.2d 90, 91 (Minn. 1977). However, the State Court never addressed the conflict between the law of Minnesota, and the United States Supreme Court precedent in Maryland v. Pringle.[2]

---

[2]Strictly construed, it also appears that the State District Court, in granting the Motion to Dismiss, was addressing whether the charges against the Defendant could proceed to Trial, and not whether there was probable cause for the Defendant's arrest. While this may appear to be a technical distinction, the Government underscores that a State District Court Judge issued the State Court Complaint against the Defendant on a showing of probable cause. Cf., Sanders v. Sears, Roebuck & Co., 984 F.2d 972 (8th Cir. 1993)("We think it clear that the state court ruled on a motion for probable cause for the case to go to the jury, not probable cause for arrest," and "[a]s such, the issue of probable cause for arrest was never litigated in the state court."); see also, United States v. Mastrangelo, 733 F.2d 793, 798-99 (11th Cir. 1984)("Therefore, even assuming a federal district court is bound by a state court's determination of probable cause to arrest, the state court in this case made no finding on the legality of the conspiracy arrest but simply found that the evidence would not support a conviction."). Here, we do not rely upon the technical distinction, as we are fully persuaded that our analysis of the issue presented is governed by Federal law, and not

(continued...)

More importantly, the fact that the State Court dismissed the Defendant's State criminal charge does not preclude a Federal Court finding that probable cause existed for the Defendant's arrest.  See, United States. v. Bell, 54 F.3d 502, 504 (8th Cir. 1995)("Thus, when a federal court must decide whether to exclude evidence obtained through an arrest, search, or seizure by state officers, the appropriate inquiry is whether the arrest, search, or seizure violated the Federal Constitution, not whether the arrest, search, or seizure violated state law."); see also, United States  v. Lewis, 183 F.3d 791, 794 (8th Cir. 1999).   Therefore, the dismissal of the Defendant's State criminal proceedings does not impact upon our determination as to the presence of probable cause, under Federal law, for the Defendant's arrest.

In sum, the Defendant's argument, that his arrest was unconstitutional, and that his subsequent recorded telephonic statements should be suppressed, is without merit, and accordingly, we recommend that his renewed Motion to Suppress be denied.

NOW, THEREFORE, It is --

RECOMMENDED:

That the Defendant's Motion to Suppress Statements [Docket No. 58] be denied.

---

[2](...continued)
by the laws of Minnesota.

Dated: September 18, 2006                    s/Raymond L. Erickson

                                             Raymond L. Erickson
                                             CHIEF U.S. MAGISTRATE JUDGE

**NOTICE**

Pursuant to Rule 45(a), Federal Rules of Criminal Procedure, D. Minn. LR1.1(f), and D. Minn. LR72.1(c)(2), any party may object to this Report and Recommendation by filing with the Clerk of Court, and by serving upon all parties **by no later than October 5, 2006**, a writing which specifically identifies those portions of the Report to which objections are made and the bases of those objections. Failure to comply with this procedure shall operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals.

If the consideration of the objections requires a review of a transcript of a Hearing, then the party making the objections shall timely order and file a complete transcript of that Hearing **by no later than October 5, 2006**, unless all interested parties stipulate that the District Court is not required by Title 28 U.S.C. §636 to review the transcript in order to resolve all of the objections made.